IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

           Plaintiff,

v.

JAMES WARD, et al.,

           Defendants.

NO. CR 11-393 TEH

ORDER REGARDING RESTITUTION

This matter came before the Court on December 3, 2012, for a hearing on the amount of restitution due to the victims of the criminal conspiracy of which Defendants James Ward, Edward Locker, Richard Tipton, and David Lin have been convicted. Having considered the parties' oral and written arguments and the relevant evidence in this case, the Court finds, for the reasons given below, that each Defendant is jointly and severally liable for $8,628,963.44 in restitution.

**BACKGROUND**

Defendants were jointly engaged in a business providing private loans to builders of single-family homes in and around Mountain View, California. The first iteration of Defendants' business venture was Jim Ward & Associates, Inc. ("JWA"). JWA was followed by JSW Financial, Inc. ("JSW"), incorporated in April 2005. After JWA ceased operations in January 2006, JWA's principals continued to operate the same business in the same location as JSW.

The first investment products to be offered by JWA were "fractional interest investments." These investments were secured by deeds of trust on real property. JWA, and later JSW, loaned the money in the fractional interest investments to borrowers who were in the business of constructing single-family homes. Each fractional interest investment was

made in order to fund, in part, the development of a specific piece of real property. While the development projects were under construction, the fractional investors received interest payments; when a completed project was sold, the investors' principal was returned to them.

In the fall of 2002, JWA began to offer a new investment product – Blue Chip Reality Fund, LLC ("Blue Chip"). Unlike the fractional interest investments, Blue Chip was "pooled," meaning that investor money was not designated for use in a particular construction project, but rather could be used for several different projects. JSW began offering a second pooled investment fund, Shoreline Investment Fund, LLC ("Shoreline"), in the fall of 2006. JSW was the manager of Blue Chip and Shoreline, and it determined the allocation of the pooled investment funds among various construction projects.

Beginning no later than September 2005 and continuing through October 2008, Defendants represented to investors in various mailings that their investments in Blue Chip and Shoreline were secured by deeds of trust in the same manner as were investments in the fractional interest investments. In fact, they were not. Defendants made these misrepresentations in order to solicit new investment money and induce investors to keep their money in Blue Chip and Shoreline.

Around 2005, JSW began to transfer money from the fractional interest investments into Blue Chip and Shoreline without the investors' consent. As the real estate market crashed, JSW experienced a cash flow crisis, in response to which it increased its unauthorized transfers of fractional investors' money to Blue Chip and Shoreline. JSW also solicited direct, unsecured loans from several individuals.

In November 2008, Defendants' bankruptcy counsel informed investors that JSW was out of money, their investments in Blue Chip and Shoreline were unsecured, and it was unlikely that they would recover any of the money they had invested in the funds. Also gone was the money that Defendants had transferred from fractional interest investments into Blue Chip and Shoreline and the money invested in JSW through direct, unsecured loans.

On June 21, 2011, a federal grand jury returned an indictment charging Defendants with eighteen counts in connection with the misrepresentations they made to Blue Chip and Shoreline investors, including one count of conspiracy to commit mail and wire fraud, seventeen counts of mail fraud, and one count of wire fraud. Defendants Ward, Locker, and Tipton entered into plea agreements, pursuant to which each pled guilty to Count One of the indictment, conspiracy to commit mail and wire fraud. Defendant Lin exercised his right to a jury trial and, on May 15, 2012, the jury returned a verdict convicting him of all eighteen counts. The Court subsequently sentenced Ward, Locker, Tipton, and Lin to terms of imprisonment of 60, 30, 18, and 28 months, respectively.

In the sentencing proceedings, the parties agreed to defer the entry of an order on the amount of restitution until a later date, pursuant to 18 U.S.C. § 3664(d)(5). Presently under consideration is the government's request for an order amending Defendants' judgments to specify the amount of restitution.

**LEGAL STANDARD**

It is the government's burden to prove the amount of loss for restitution purposes by a preponderance of the evidence. 18 U.S.C. § 3664(e). The government must also show by a preponderance of the evidence that an individual is a victim of the crime of which the defendant was convicted, and that the victim's losses were caused by the defendant's offense conduct. *United States v. Gossi*, 608 F.3d 574, 579 (9th Cir 2010); *United States v. Peterson*, 538 F.3d 1064, 1074-75 (9th Cir. 2008).

**DISCUSSION**

The government recommends that the Court enter a restitution order in the amount of $32,273,793, encompassing losses to Blue Chip and Shoreline investors ($8,628,963), fractional investors ($20,203,505), and direct investors ($3,441,325). Defendants have agreed to a restitution order of $8,628,963.44, which represents the losses to individuals who invested in Blue Chip and Shoreline from the inception of the funds through September

2008.[1] They contest the balance of the amount requested by the government, arguing that losses from fractional interest investments and investments in unsecured loans made directly to JWA or JSW were not caused by the conduct of which they were convicted.

The Mandatory Victims Restitution Act ("MVRA"), which governs the restitution determination in this case, requires courts to order restitution to victims of offenses against property "in which an identifiable victim has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(a)(1) & (c)(1)(B). The MVRA defines a "victim" as:

> a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(2). Under the MVRA, the court must "order restitution to each victim in the full amount of each victim's losses as determined by the court." 18 U.S.C. § 3664(f)(1)(A). However, a court need not order restitution if it finds that "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3).

In conspiracy cases, "the court can order restitution for damage resulting from any conduct that was part of the conspiracy and not just the specific conduct that met the overt act requirement of the conspiracy conviction." *United States v. Reed*, 80 F.3d 1419, 1423 (9th Cir. 1996). The restitution order may include compensation to a victim for losses resulting from "acts of related conduct for which [the defendant] was not convicted." *United States v. Lawrence*, 189 F.3d 838, 848 (9th Cir. 1999). Thus, in a conspiracy case, a restitution order may compensate victims not named in the indictment and be based on uncharged conduct of which the defendant was not convicted. *See United States v. Brock-Davis*, 504 F.3d 991, 999-1000 (9th Cir. 2007).

---

[1] Defendants initially opposed the inclusion in the restitution order of investments in Blue Chip and Shoreline made prior to September 2005, but at oral argument, they conceded that these investments should be included.

4

Nevertheless, an order of restitution may only compensate victims "for actual losses caused by the defendant's criminal conduct." *United States v. Gamma Tech Indus., Inc.*, 265 F.3d 917, 926 (9th Cir. 2001). It is not enough to show that but for Defendants' conduct, the loss would not have occurred; the government must also demonstrate proximate causation. 18 U.S.C. § 3663A(a)(2); *see also United States v. Meksian*, 170 F.3d 1260, 1263 (9th Cir. 1999). While the Defendant's criminal conduct need not be the only cause of the loss, "any subsequent action that contributes to the loss, such as an intervening cause, must be directly related to the defendant's conduct." *Gamma Tech*, 265 F.3d at 928. An intervening cause that is not directly related to the conduct of which defendants have been convicted may render the causal chain so attenuated that a restitution award becomes unreasonable. *United States v. Gordon*, 393 F.3d 1044, 1055 (9th Cir. 2004).

With these general principles in mind, the Court examines the government's request with regard to each of the two disputed categories of investors – fractional investors and direct investors.

**A. Fractional investors**

The Government argues that Defendants' conduct caused fractional investors' losses because Defendants deceived them into believing that JSW was a "healthy, successful business," thereby inducing them to invest. Gov't Response at p. 2-3 (Docket No. 174). In support of this theory, the government points to evidence that Defendants purposefully did not inform the fractional investors of the financial instability of the business as a whole, or of the fact that some of the money in fractional interest investments was being directed into Blue Chip and Shoreline. At trial, one investor stated that he would not have placed his money in a fractional interest investment had he known that part of his investment might be diverted into Blue Chip or Shoreline; aside from this testimony, there is no direct evidence that but for Defendants' criminal conduct, the fractional investors would not have entrusted their money to JWA or JSW. Moreover, the government does not argue that Defendants' failure to affirmatively disclose JSW's financial instability to the fractional investors was criminal, and it does not point to any specific misrepresentations that Defendants made to

5

investors about the fractional interest investments. The weak nexus between Defendants' criminal conduct and fractional investors' losses does not support a restitution award encompassing the entirety of those losses.

The government points out that some of the fractional investors also invested in Blue Chip and Shoreline, and so presumably were exposed to Defendants' misrepresentations about those funds. Even if the Court were to draw the attenuated inference necessary to conclude that misrepresentations about Blue Chip and Shoreline induced investors to place their money in fractional interest investments, the government has not presented evidence that would permit the Court to identify the subset of fractional investors who were exposed to those misrepresentations. It is therefore impossible for the Court, based on the record before it, to determine what proportion of the fractional investors' losses may have been caused by misrepresentations about Blue Chip and Shoreline.[2]

Moreover, the sharp downturn in the real estate market between 2005 and 2008 constitutes an intervening cause of fractional investors' losses that is not attributable to Defendants' criminal conduct. It is apparent that some, if not all, of the losses suffered by fractional investors resulted from the market downturn, which caused projects in which the investors held fractional interests to fail. Because fractional interest investments – in contrast to investments in Blue Chip and Shoreline – were secured in the manner Defendants represented they were, losses attributable to a decline in investment value as a result of market forces are not properly included in the restitution order. *See Gamma Tech*, 265 F.3d at 927 (collecting cases denying restitution for losses that did not directly result from a defendant's criminal conduct); *cf. Meksian*, 170 F.3d at 1263 (reversing restitution order for loss sustained by lender due to worthlessness of property serving as loan collateral in loan-

---

[2] The government also points to evidence that Defendants transferred money to Blue Chip and Shoreline from the fractional interest investments, and that they did not inform the fractional investors of these transactions. Losses resulting from these unauthorized transfers are attributable to Defendants' conduct as part of the conspiracy. But the Government represents that it has no practical method of determining which fractional investors lost money as a result of the unauthorized transfer of funds to Blue Chip and Shoreline. It therefore does not seek restitution for these losses separately from the losses attributable to fractional interest investments generally. Gov't Response at p. 6 (Docket No. 174).

application fraud case); *Brock-Davis*, 504 F.3d at 1002 (reversing order of restitution for lost rental of hotel room during "slow winter season"). In *United States v. Berger*, the court upheld a restitution award based on the district court's reasonable attribution of a portion of victims' losses to a downturn in the electronics market. 473 F.3d 1080 (9th Cir. 2007). Here, however, there is no evidence in the record that would permit the Court to make a reasonable determination of the proportion of fractional investors' losses that is attributable to the downturn in the real estate market as opposed to Defendants' criminal conduct.

At best, the evidence before the Court suggests that some, but not all of the fractional investors made their investments as a result of Defendants' criminal conduct, and that some, but not all of their losses are attributable to Defendants' criminal conduct. To adopt the government's recommendation, the Court would have to infer from this evidence that the entirety of fractional investors' losses was directly and proximately caused by Defendants' criminal conduct in the course of the conspiracy. The evidence before the Court does not support that inference.

### B. Direct lenders

The government's restitution request also includes $3,441,325 lost as a result of direct, unsecured loans made to JWA and JSW by four investors, identified as JA ($841,710), SA and FA (a family) ($115,159), EB ($2,113,260), and BS ($371,196). In support of this request, the government points to victim impact statements in which JA, SA and FA, and EB indicated that they felt deceived by Defendants and that the trust they had placed in Defendants had been violated. Gov't Resp. at 5 (Docket No. 174). In addition, investor JA reported having received monthly statements from Defendants reflecting interest earnings of $10,000 to $12,000 per month. *Id.* However, the government does not point to any evidence of specific misrepresentations made by Defendants to these victims which caused them to make unsecured loans to JWA or JSW and it does not argue that the interest income reflected on JA's account statement constituted a misrepresentation. The investors' statements that they felt deceived and that their trust had been violated are insufficient to support an inference that Defendants engaged in criminal conduct that induced them to make unsecured

7

loans. The government therefore has not met its burden to show that the losses to investors who made direct, unsecured loans resulted from Defendants' criminal conduct.

### C. Alternative restitution request

The government requests that if the Court disagrees with its reasons for requesting restitution on behalf of fractional investors and direct investors, a restitution order be entered in the amount of $8,628,963.44, the sum to which the government and Defendants have agreed. This amount is lower than the amount of loss calculated for Guidelines purposes because it excludes funds transferred from the fractional interest investments into Blue Chip and Shoreline. The government states that it has "no practical method" of discerning the amount of restitution that would be due to individuals belonging to this subset of fractional investors without the investment of additional resources which "would unduly prolong and complicate the sentencing process." Gov't Response at p. 6 (Docket No. 174). On this basis, the Court finds that determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process. *See* 18 U.S.C. § 3663A(c)(3). Accordingly, the restitution order will be entered in the amount of $8,628,963.44.

**CONCLUSION**

For the foregoing reasons, Defendants' judgments of conviction shall be amended to reflect that each Defendant is jointly and severally liable to the victims of the conspiracy for **$8,628,963.44**. Each amended judgment is to specify that the Defendants shall pay the restitution to the persons named, and the amounts set forth, in a document entitled "*United States v. Ward, et al.*, CR-12-0393 TEH; Restitution Schedule," to be incorporated by reference into the judgment in each Defendant's case. The Government shall submit this document to the Probation Office, to be placed on file with the Clerk of Court for use in processing restitution payments.

**IT IS SO ORDERED.**

Dated: 01/03/2012

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT